UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARREN PAYNE,

    Plaintiff,

v.                                              Case No: 8:18-cv-365-T-36TGW

ASHISH SANON,

    Defendant.
_____/

## ORDER

This matter comes before the Court on Defendant Ashish Sanon, M.D.'s Dispositive Motion to Dismiss First Amended Complaint (Doc. 41) and Motion to Strike First Amended Complaint (Doc. 42). Defendant moves to dismiss, with prejudice, Relator's First Amended Complaint, brought pursuant to the False Claims Act, for failing to state a claim and failing to plead fraud with the particularity required by Fed. R. Civ. P. 9(b). Relator responded in opposition to the motion to dismiss (Doc. 46), and Defendant replied (Doc. 49). In his motion to strike, Defendant seeks to strike allegations in the First Amended Complaint he claims are scandalous, immaterial, and impertinent. Relator does not oppose the motion to strike. *See* Doc. 43. The Court, having considered the motions and being fully advised in the premises, will grant Defendant's motion to dismiss and will dismiss the First Amended Complaint, without prejudice. Because the First Amended Complaint will be dismissed, the

motion to strike will be denied as moot. The Court will permit Relator the opportunity to file a Second Amended Complaint.

I. BACKGROUND[1]

Defendant, Ashish Sanon, M.D., is an ophthalmologist who formerly practiced medicine in Citrus County, Florida. Doc. 38 ¶¶ 21, 23–24. Relator, Darren Payne, M.D., is also an ophthalmologist, licensed to practice in the State of Florida. *Id.* ¶ 20. Relator purchased Defendant's ophthalmology practice in 2016, allegedly induced to purchase the practice due to its profitability. *Id.* ¶ 21. Relator states Defendant reported that "he was in the top 3% of solo practitioners in terms of billing; that he was making approximately $400 per month from each of his Medicare patients." *Id.* After the purchase of the practice and in reviewing patient charts provided by the Defendant, Relator claims he discovered years of Medicare fraud conducted by the Defendant. *Id.* ¶¶ 22, 72.

Relator specifically alleges that while practicing ophthalmology, Defendant would falsely diagnose patients as being "glaucoma suspect"[2] so that Defendant could provide unnecessary services to the patients and subsequently bill Medicare for the services. *Id.* ¶ 45. These services would consist of various eye examinations that aid in identifying glaucoma symptoms but that generally would not be covered by Medicare

---

[1] The following statement of facts is derived from the Plaintiff's Amended Complaint (Doc. 38), the allegations of which the Court must accept as true in ruling on the instant motion. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

[2] "A patient is considered glaucoma suspect if he does not currently suffer from glaucoma, but presents characteristics suggesting a high risk of developing glaucoma." Doc. 38 ¶ 47.

2

unless conducted on patients who are identified as glaucoma suspect. *Id.* ¶ 48. The tests conducted as part of this alleged scheme include Scanning Computerized Ophthalmic Diagnostic Imaging (SCODI),[3] fundus photography,[4] and visual field examinations.[5] *Id.* ¶¶ 52–59. Each of these tests have specific Local Coverage Determinations (LCDs) which state when a service will be considered "medically reasonable and necessary" by Medicare and thus covered by the program. *Id.* ¶¶ 49, 52–59.

Relator also alleges that Defendant conspired with other physicians to engage in the above described scheme, identifying Dr. Francesann Ford and Dr. Donghai V. Ho as co-conspirators and also stating that more, presently unnamed, individuals may be involved. *Id.* ¶¶ 103–104. He alleges that these physicians were engaged as *locum tenetes*,[6] or locums, while Defendant was not practicing medicine. *Id.* ¶ 102. The Relator explains that the locums allegedly submitted false claims to Medicare for reimbursement and also created false records in furtherance of these false claims,

---

[3] SCODI consists of a number of different tests, "which are performed for the purpose of detecting glaucomatous damage to the nerve fiber layer or optic nerve of the eye." Doc. 38 ¶ 52. The specific test allegedly conducted by Defendant is Heidelberg retina tomography, "which is used to examine the back of the eye." *Id.* at n.15.
[4] Fundus photography uses a retinal camera, for diagnostic purposes, to photograph the vitreous, retina, choroid, and optic nerve. Doc. 38 ¶ 55.
[5] A "visual field examination" is a test used to detect loss of vision, a symptom of glaucoma. Doc. 38 ¶ 58.
[6] *Locum tenetes* or "locums" are "physicians working as independent contractors, sometimes through temp agencies, who are sometimes hired to 'cover' for physicians who are on vacation, maternity leave, etc." Doc. 38 ¶ 102.

agreeing to "follow Defendant's practice of falsely diagnosing Medicare patients as glaucoma suspect." *Id.* ¶ 104.

Relator is aware of over 400 Medicare patients on which the Defendant conducted these eye tests between 2009 and 2016, based on the false glaucoma suspect diagnosis. *Id.* ¶ 51. Of these 400 patients, Relator gives the details of four patients under the pseudonyms "Greene," "Roe," "Smith," and "Pink," who are typical of the group. *Id.* According to Relator, each of these patients received a glaucoma suspect diagnosis without any clinical indications described in the record to support such a diagnosis. *Id.* ¶¶ 74–94. Medical records of these patients are attached to Relator's Amended Complaint as well as summarized within the pleading. *Id.*; *see* Docs. 38-10–38-14.

Each of the four named patients are Medicare beneficiaries who were first seen by Defendant sometime between 2008 and 2010. Doc. 38, ¶¶ 74, 82, 86, 91. They each received a diagnosis of Glaucoma Suspect over the course of their treatment with Defendant and received several rounds of the SCODI, fundus photography, and visual field examination testing. *Id.* ¶¶ 78, 84, 88, 93. Patients Greene and Roe were seen by Dr. Ford and Dr. Ho one time each, and at these visits a Glaucoma Suspect diagnosis was noted. *Id.* ¶¶ 78, 84; *see also* Doc. 38-10 at 6, 10; Doc. 38-11 at 2, 6. Patients Smith and Pink were not seen by Drs. Ford and Ho, according to Relator's allegations. Doc. 38 ¶¶ 88, 93. Relator specifically alleges that Medicare claims were made for each of these patients based on the fraudulent Glaucoma Suspect diagnoses, stating that "Defendant and/or his co-conspirators ordered VFE's, fundus photography, and

SCODI testing on numerous occasions, and sought and received Medicare reimbursement for each such instance." *Id.* ¶¶ 77, 83, 87, 92.

On May 12, 2020, Relator filed his First Amended Complaint[7] against Defendant, asserting three claims under the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* Doc. 38. In Count One, Relator alleges a violation of § 3729(a)(1)(A) for presenting false or fraudulent claims to Medicare for payment. Doc. 38 ¶¶ 107–114. In Count Two, Relator alleges a violation of § 3729(a)(1)(B) for knowingly making or using false records or statements material to false or fraudulent claims for payment. Doc. 38 ¶¶ 115–120. Finally, in Count Three, Relator sues Defendant for conspiracy, alleging Defendant conspired with Drs. Ford, Ho, and others to create false records and statements material to a false or fraudulent claim and presented those fraudulent claims to Medicare for payment. *Id.* ¶¶ 121–126.

Defendant moves to dismiss the First Amended Complaint for failing to state a claim and failing to meet the heightened pleading requirements for fraud claims. Doc. 41. Among other arguments, he contends that the Relator does not have the requisite first-hand knowledge of the events described in the complaint and that the complaint does not contain "any material facts pled with the degree of particularity required by Rule 9(b)," rather, it only contains broad, general, and conclusory allegations. *Id.* at 15–16. Relator responds that the First Amended Complaint satisfies all of the

---

[7] This action was originally filed on February 12, 2018. Doc. 1. The United States declined intervention. Doc. 10. Defendant moved to dismiss the initial complaint for failure to state a claim and failure to meet the heightened pleading requirements for fraud claims. Doc. 29. In response, Relator filed the First Amended Complaint. Doc. 38.

5

necessary requirements and is sufficient to meet the pleading standard for causes of action under the False Claims Act. Doc. 46. Relator urges the Court to deny the motion to dismiss or, alternatively, permit Relator the opportunity to amend. *Id.* at 19.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are insufficient. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not enough. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

In addition to including "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2); *Ashcroft*, 556 U.S. at 677-78; each claim must be "limited as far as practicable to a single set of circumstances," and each claim founded on a separate transaction or occurrence must be stated in a separate count or defense if doing so would promote clarity. Fed. R. Civ. P. 10(b).

Failure to comply with these rules may result in a shotgun pleading. When faced with such a pleading, a court should strike the complaint and instruct plaintiff's counsel to file a more definite statement. *See Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 984 (11th Cir. 2008).

Additionally, Federal Rule of Civil Procedure 9(b) places more stringent pleading requirements on claims alleging fraud. Fed. R. Civ. P. 9(b). "[U]nder Rule 9(b) allegations of fraud must include facts as to time, place, and substance of the defendant's alleged fraud." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (citation and internal quotations omitted). Plaintiffs are thereby required to set forth "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (internal quotation marks omitted) (citing *Clausen*, 290 F.3d at 1310). Failure to satisfy the particularity requirement under Rule 9(b) amounts to failure to state a claim under Rule 12(b)(6). *See, e.g., Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

## III.   DISCUSSION

In the First Amended Complaint, Relator asserts federal False Claims Act violations arising from Defendant Dr. Sanon's alleged false diagnoses that his patients were at risk for glaucoma and his resulting administration of various unnecessary eye tests to the patients to be paid for by Medicare. Doc. 38. The False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), imposes civil liability on "any person who … knowingly presents, or causes to be presented, a false or fraudulent claim for payment"

to the federal government or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *United States v. AseraCare, Inc.*, 938 F.3d 1278, 1284 (11th Cir. 2019) (quoting 31 U.S.C. § 3729(a)(1)(A)–(B)). The FCA "serves as a mechanism by which the Government may police noncompliance with Medicare reimbursement standards after payment has been made." *AseraCare, Inc.*, 938 F.3d at 1284.

### A. Shotgun Pleading

The First Amended Complaint contains three counts, each of which incorporates by reference all of the paragraphs that precede it. *See* Doc. 38, ¶¶ 107, 115, 121. As a consequence, the counts are confusing and repetitive, with Counts Two and Three incorporating alleged factual and legal conclusions not necessarily related to the subsequent Count. It is apparent that the First Amended Complaint is a deficient shotgun pleading. *See Strategic Income Fund, LLC v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions."). Because the First Amended Complaint constitutes a shotgun pleading, the Court *sua sponte* finds it is due to be dismissed, with leave to amend.

### B. Presentation of False Claims – Count One

In Count One, Relator alleges Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting false or fraudulent claims for payment by Medicare. The

gravamen of Relator's claim is Dr. Sanon routinely and falsely diagnosed patients as being "glaucoma suspect" in order to render unnecessary services to them at Medicare's expense.

> To establish a cause of action under § 3729(a)(1)(A), a relator must prove three elements: (1) a false or fraudulent claim, (2) which was presented, or caused to be presented, for payment or approval, (3) with the knowledge that the claim was false. 31 U.S.C. § 3729(a)(1)(A).

*United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir. 2017).

The Eleventh Circuit has repeatedly held, the "'*sine qua non* of a False Claims Act violation' is the submission of a false claim to the government." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1045 (11th Cir. 2015) (quoting *Clausen*, 290 F.3d at 1311). To state a claim in an action under the False Claims Act, Rule 8's pleading standard is supplemented but not supplanted by Federal Rule of Civil Procedure 9(b). *See Clausen*, 290 F.3d at 1309. In pertinent part, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud," but scienter may be alleged generally. To satisfy this heightened-pleading standard in an FCA action, the Relator has to allege "facts as to time, place, and substance of the defendant's alleged fraud," particularly, "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* at 1310 (quoting *Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 567–68 (11th Cir. 1994)) (internal quotation marks omitted).

"The [FCA] does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not

9

owe." *Clausen*, 290 F.3d at 1309 Thus, the primary inquiry regarding whether a relator's allegations state a claim under this subsection is, did the defendant present (or caused to be presented) to the government a false or fraudulent claim for payment? *Hopper*, 588 F.3d at 1326. To satisfy Rule 9(b)'s heightened-pleading requirements, the Relator must allege the "actual presentment of a claim ... with particularity," *id.* at 1327, meaning particular facts about "the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government," *Corsello*, 428 F.3d at 1014. Here, review of the First Amended Complaint reveals that Relator fails to allege particular facts as to the presentment of any claim to the federal government for payment.

While Relator makes references to various dates of service and tests performed on those dates, Relator fails to allege any detail regarding the presentment of a claim for payment by Medicare. Failure to sufficiently plead that a claim was submitted justifies dismissal of a claim under § 3729(a)(1)(A). In *Clausen*, for example, the district court found that the First Amended Complaint's failure to identify any specific claims that were submitted to the United States or identify the dates on which those claims were presented to the government was a fatal flaw and that the Second Amended Complaint's addition of conclusory statements that LabCorp submitted for specified tests on the "date of service or within a few days thereafter," suffered from the same defect, *i.e.*, insufficient information about the actual submission of claims. *Clausen*, 290 F.3d at 1311. The appellate court agreed, finding that the allegations in the Second Amended Complaint were conclusory and reasoning that "[i]f Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent

10

conduct cannot be alleged in such conclusory fashion." *Id.* at 1311, 1313.  As in this case, Clausen provided patient dates of testing and testing procedures, but no information about claims actually submitted to the government. The appellate court held that dismissal was proper. *Id.* at 1313-15. Here, Relator does not provide any specific factual allegations of the "who," "what," "where," "when," and "how" of fraudulent submissions to the government. *See Corsello*, 428 F.3d at 1014.

The First Amended Complaint is devoid of any specific allegations regarding amounts of charges submitted, dates that charges were submitted, information about billing practices or policies, specific claims presented to the government to be paid, payments made in response to the submitted claims, or copies of any bills or payment. While Rule 9(b)'s particularity requirement "does not mandate all of this information for [each] alleged claim[,] ... some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b).'" *Clausen*, 290 F.3d at 1312 n.21. Given the paucity of Relator's allegations, Count One fails to state a claim for presentment under § 3729(a)(1)(A) and is due to be dismissed.

Defendant also argues that Relator's attempt to bootstrap the alleged 7000 FCA violations based on vague, conclusory allegations of "information and belief" fails. The Court agrees. *See, e.g., Britton v. Lincare, Inc.,* 634 F. App'x 238, 241 (11th Cir. 2015) (allegations of "[u]pon information and belief" that defendant wrongfully billed Medicare for services was speculative and insufficient to satisfy the pleading standard set by Rule 9(b)). Rule 9(b) requires fraud allegations to be pleaded with specificity,

11

and Relator's allegations regarding the potential other 7000 FCA violations fall far short.

### C. False Record or Statement – Count Two

In Count Two, Relator sues Defendant for violation of § 3729(a)(1)(B). To properly state a claim under this section, the relator must show that "(1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim." *Lincare Holdings, Inc.*, 857 F.3d at 1154 (citing 31 U.S.C. § 3729(a)(1)(B)). In this case, Relator's theory of liability under section (1)(B) is that when Defendant submitted claims for payment to the Centers for Medicare & Medicaid Services ("CMS"), which administers the Medicaid program for the federal government, he used false records, statements, and documents. Relator alleges the submission of these false records and statements caused CMS to pay out monies it would not have paid had it known the falsity of Defendant's records. Defendant does not clearly address any arguments to Count Two. However, a fair reading of the motion to dismiss suggests that Defendant believes Count Two fails for the same reasons he argued for Count One.

Review of Relator's allegations in Count Two reveal they suffer from the same pleading deficiencies as Count One, namely they lack particularity to satisfy Rule 9(b). Relator generally alleges Defendant used false records, but he does not identify any detail as to the substance or dates of records used and statements made. Thus, Count Two is due to be dismissed.

### D. Conspiracy – Count Three

Count Three alleges Defendant engaged in a conspiracy with Dr. Ford, Dr. Ho, and others to submit false claims to the federal government for payment. As argued by Defendant in the motion to dismiss, Dr. Ford and Dr. Ho saw patients Greene and Roe on only a single occasion each. Doc. 38, ¶¶ 78, 84. And although Relator generally alleges there were other locums who were part of the scheme, there are no factual allegations to indicate any other doctor saw the four exemplar patients or any other of Defendant's patients. Critically, there are not even any notations of tests being ordered by Dr. Ho on the dates he provided services to Greene and Roe. *See id.*

A person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid" is subject to FCA liability. 31 U.S.C. § 3729(a)(1)(C). Although the FCA does not define the elements of conspiracy, courts recognize that "general civil conspiracy principles apply." *U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n. 3 (7th Cir. 1999) (citing *U.S. v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991)); *see also Corsello*, 428 F.3d at 1014. Thus, a Relator pleading a claim for FCA conspiracy must allege (1) that "an agreement existed to have false or fraudulent claims allowed or paid" to the government, (2) that each alleged member of the conspiracy "joined that agreement," and (3) that "one or more conspirators knowingly committed one or more overt acts in furtherance of the object of the conspiracy." *See Rutledge v. Aveda*, No. 2:14–CV–00145–AKK, 2015 WL 2238786, at *12 (N.D. Ala. May 12, 2015) (citing *Corsello*, 428 F.3d at 1014). Because the elements of the cause of action are based on the alleged underlying fraud, the conspiracy claim, like the

13

claims in Counts One and Two, must be pleaded with particularity as required by Rule 9(b). Relator's allegations again fall short, and Count Three is due to be dismissed. *See Corsello*, 428 F.3d at 1014 (bare legal conclusions unsupported by specific allegations of any agreement or overt act is insufficient to state a claim for FCA liability for conspiring to defraud the government by getting false or fraudulent claims allowed or paid).

### E. Motion to Strike (Doc. 42)

Defendant moves to strike certain allegations in the First Amended Complaint regarding his nationality, immigration status, and revocation of his medical license that Defendant claims are impertinent, scandalous, and immaterial. The allegations sought to be stricken from the First Amended Complaint include the entirety of ¶¶ 2, 4, fn1, fn2, 25, fn4, 27, and 28 and portions of ¶¶ 3, 5, 24, 26, 45, and 102 of the First Amended Complaint (Doc. 38).

Defendant argues the referenced allegations are irrelevant to the issues before the Court and that inclusion of same in Relator's complaint would unduly prejudice Defendant. Given the Court's findings above that the First Amended Complaint is due to be dismissed, the motion to strike is denied as moot. However, per Relator's Notice of Non-Opposition (Doc. 43), the allegations identified by Defendant in his Motion to Strike (Doc. 42) should not be included in the Second Amended Complaint.

### F. Leave to Amend

Defendant argues that dismissal of the First Amended Complaint should be with prejudice as Relator has already amended his Complaint once, Relator is an

14

outsider with no first-hand knowledge relying solely on his review of patient charts to state his claims, and that given Relator's conclusory allegations, there is no indication that amendment will cure the defects in his complaint.

With regard to Defendant's claim that Relator is without first-hand knowledge, the Court notes that because there is no claim that Relator's allegations are based on, or substantially the same as, publicly-disclosed allegations, the Court need not reach the issue of whether Relator is an original source on this record.[8] To the extent Defendant argues Relator's allegations do not establish he is an "insider," neither the FCA nor the courts mandate the relator be an "insider," although "insider[s] might have an easier time obtaining information about billing practices and meeting the pleading requirements under the [FCA]." *Clausen*, 290 F.3d at 1314 (recognizing outsiders may have to work harder to learn the details of the alleged schemes).

Regardless, "a district court's discretion to dismiss a complaint without leave to amend is 'severely restrict[ed]' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of*

---

[8] The current version of the FCA defines an "original source" as someone "who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). "The prior version of the FCA defined an 'original source' as 'an individual who has direct and independent knowledge of the information on which the allegations are based[,]' 31 U.S.C. § 3730(e)(4)(B) (2009), [which] [t]he Eleventh Circuit has interpreted to require first-hand knowledge." *U.S. ex rel. Patel v. GE Healthcare, Inc.*, No. 8:14-CV-120-T-33TGW, 2017 WL 4310263, at *4 (M.D. Fla. Sept. 28, 2017) (citing *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927, 936 (11th Cir. 2016)).

*Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (quoting *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 597 (5th Cir. 1981)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Nothing on the record before the Court suggests undue delay, bad faith, or dilatory motive on the part of Relator, nor that Defendant will be unduly prejudiced if the Court allows Relator an opportunity to amend the complaint. And while Relator has already amended his complaint once, he did so voluntarily, in response to Defendant's motion to dismiss and without the benefit of an order from the Court. There is no evidence of repeated failure due to previously allowed amendments. Therefore, the Court will allow Relator an opportunity to file a Second Amended Complaint.

In light of Relator's lack of opposition to the motion to strike (Doc. 43), the Second Amended Complaint should avoid re-pleading any scandalous, impertinent, or immaterial allegations in the Second Amended Complaint. Additionally, the Second Amended Complaint should cure the pleading deficiencies related to the complaint being a shotgun pleading.

For the reasons stated above, it is hereby

**ORDERED**:

1. Defendant Ashish Sanon, M.D.'s Dispositive Motion to Dismiss First Amended Complaint (Doc. 41) is **GRANTED**, and Relator's First Amended Complaint is **DISMISSED, without prejudice**.

2. Defendant's Motion to Strike First Amended Complaint (Doc. 42) is **DENIED as moot**.

3. If he so chooses, Relator is granted leave to file a Second Amended Complaint, consistent with this Order. The Second Amended Complaint shall be filed on or before **February 12, 2021**. Failure to file a Second Amended Complaint within the time provided will result in dismissal of this action without further notice.

**DONE AND ORDERED** in Tampa, Florida on January 29, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any